```
IN THE UNITED STATES DISTRICT COURT
  FOR THE DISTRICT OF SOUTH CAROLINA
          CHARLESTON DIVISION
```

**FILED**

AUG 1 4 2003

LARRY W. PROPES, CLERK
CHARLESTON, SC

| | |
|---|---|
| The United States of America, ) | |
| ) | C.A. No. 2:01-0155-23 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Charleston County, South Carolina ) | |
| Charleston County Council; John O. ) | |
| Conlon, Toi Ahrens Estes, Cindy M. ) | |
| Floyd, Curtis E. Bostic, A.D. Jordan, ) | |
| Barrett S. Lawrimore, Timothy E. ) | |
| Scott, Leon E. Stavrinakis, Charles ) | |
| Wallace, members of Charleston ) | |
| County Council; Charleston County ) | |
| Election Commission, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| Lee H. Moultrie, George Freeman ) | |
| Maggie McGill, and Sandra Flower, ) | C.A. No. 2:01-562-23 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Charleston County Council and ) | |
| Charleston County Election ) | |
| Commission, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on the submission of a Remedial Plan by Defendants, known as 3B-Modified, and as approved by both the United States and the Private Plaintiffs. In an Order dated March 6, 2003, the Court found that Charleston County's at-large method of election for the Charleston County Council was violative of Section 2 of the 1965 Voting Rights Act of 1965, 42 U.S.C. § 1973c. The parties, for the greater part, have worked together




diligently to bring an agreed upon remedial plan before the Court with the assistance of Mr. Bobby Bowers, court-appointed expert. Both the United States and the Private Plaintiffs have formally approved the Plan, as submitted by Defendants, and object only to Defendants' proposed implementation schedule.

## DISCUSSION

I.     **Law and Analysis**

A.     **Defendant's Proposed Remedy**

After a federal court has found a violation of Section 2 of the Voting Rights Act and provides the appropriate legislative body the first opportunity to devise an acceptable remedial plan, "the court's ensuing review and remedial powers are largely dictated by the legislative body's response." *McGhee v. Granville County*, 860 F.2d 110, 115 (4th Cir.1988). If the legislative body fails to respond or responds with a legally unacceptable remedy, "'the responsibility falls on the District Court,'" *id.* (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)), to exercise its discretion in fashioning a "'near optimal'" plan. *McGhee*, 860 F.2d at 115 (quoting *Seastrunk v. Burns*, 772 F.2d 143, 151 (5th Cir.1985)). Where, however, the legislative body does respond with a proposed remedy, a court may not thereupon simply substitute its judgment of a more equitable remedy for that of the legislative body; it may only consider whether the proffered remedial plan is legally unacceptable because it violates anew, constitutional or statutory voting rights--that is, whether it fails to meet the same standards applicable to an original challenge of a legislative plan in place. *McGhee*, 860 F.2d at 115 (citing *Upham v. Seamon*, 456 U.S. 37, 42 (1982)). Importantly, if the remedial plan meets those standards, a reviewing court must then accord great deference to legislative judgments about the



exact nature and scope of the proposed remedy, reflecting as it will a variety of political judgments about the dynamics of an overall electoral process that rightly pertain to the legislative prerogative of the state and its subdivisions. *McGhee,* 860 F.2d at 115.

As stated, the Court must determine whether the proposed remedial plan "violates anew constitutional or statutory voting rights." *McGhee*, 860 F.2d at 115. Because, however, there is no history under the proposed plan by which to analyze the electoral scheme according to the "totality of the circumstances" factors prescribed by the Section 2 results-test, S. Rep. No. 97-417, 97th Cong.2d Sess. 27-30, reprinted in 1982 U.S.C.C.A.N. 177, 204-0, the Fourth Circuit has recognized that applying those factors does not aid the district court in assessing the validity of the remedial plan. *See Hines v. Mayor and Town Council of Ahoskie*, 998 F.2d 1266, 1272 (4th Cir.1993).

In *Hines*, the court reaffirmed the principles expressed in *McGhee* and *Upham* that the district court may not use "proportional representation as the ultimate standard for assessing the legal adequacy of a remedial legislative redistricting plan." *McGhee*, 860 F.2d at 118. The court stated our analysis "'must consider whether the protected voting group has a voting opportunity that relates favorably to the group's population in the jurisdiction for which the election is held.'" *Id*. (quoting *Smith v. Brunswick County, Va. Bd. of Sup'rs.*, 984 F.2d 1393, 1400 (4th Cir.1993). Moreover, in *McGhee*, the Fourth Circuit outlined the following additional principles to assist the district court in assessing a proposed remedy:

> 1. The remedy should restructure the districting system to eradicate, to the maximum extent possible by that means, the dilution proximately caused by that system; the remedy should not eradicate the dilution by altering other "electoral laws, practices, and structures" that were not actually challenged by the claim as



3

        made.

2.     The maximum extent to which a particular dilution violation may be remedied by restructuring the districting system is constrained by the size, compactness, and cohesion elements of the dilution concept. A restructuring to the maximum extent permitted by these constraints is a "complete" and legally adequate remedy for such a dilution violation.

3.     The disclaimer in amended § 2 of any "right" of racial minorities to proportional representation prevents a court from using proportional representation as the ultimate standard for assessing the legal adequacy of a remedial legislative redistricting plan.

*McGhee*, 860 F.2d at 117-18.

Application of these principles to the present case indicates that 3B-Modified withstands scrutiny. The plan provides blacks with the maximum available "opportunity . . . to elect representatives of their choice." 42 U.S.C. § 1973; *see also McGhee*, 860 F.2d at 117. Specifically, 3B-Modified provides African-Americans an opportunity to elect three representatives of their choice, (in District Nos. 4, 5, & 8), and, because of their substantial voting age population, the plan provides an opportunity for that community to exert substantial influence over two additional districts, (District Nos. 3, 6 ).

The Court agrees that the new single-member districts, to the extent possible, are composed of whole voting precincts, follow natural and geographic boundaries, and recognize and maintain intact and identifiable communities of interest and neighborhoods. Further, the districts have been drawn, to the extent possible, in such a manner as to correspond to and maintain intact, the boundaries of the existing residency districts, in recognition of the particularized and distinct needs and concerns of citizens residing in the North Charleston, City of Charleston, James Island, and East Cooper areas of Charleston County, South Carolina.



Functional compactness and contiguity of districts have been recognized and maintained in those instances where geographical compactness may not be possible or feasible. The plan leaves undisturbed other "electoral laws, practices, and structures" and was not devised in an attempt to make proportional representation the ultimate standard. The Court is satisfied that the Plan meets the constitutional strictures of population under the One Person, One Vote standard of the 14th Amendment. Accordingly, the Court approves and adopts the plan, styled 3B-Modified, as submitted by Defendants and approved by the United States and the Private Plaintiffs.

### B.     Implementation

Defendants have submitted the following implementation schedule for 3B-Modified.

The following Districts to be open for regularly scheduled general elections in 2004:

| | |
|---|---|
| Distrcit 3 | (Chairman Scott) |
| District 4 | (Councilman Jordan) |
| District 6 | (Councilman Bostic) |
| District 7 | (Councilman Lawrimore) |

The following Districts to be open for regularly scheduled general elections in 2006:

| | |
|---|---|
| District 1 | (Councilwoman Wallace) |
| District 2 | (Councilman Fava) |
| District 5 | (Councilwoman Conlon) |
| District 8 | (Councilman Roberts) |
| District 9 | (Councilman Stavrinakis) |

Defendants contend that this schedule is "consistent with and avoids unnecessary conflict with state election law" and "best reflects the legislative judgment of the Charleston County Council about the nature and scope of the proposed single-member district plan . . . ." (Def.s' Reply Prop. Timetable Implementation at 1-2.) Defendants have neither explained the conflict



with state election law that the schedule avoids nor illuminated the "legislative judgments" of the Council which compel this schedule. In response, the United States requests that all nine districts be open for general elections in 2004 because Defendants' proposed timetable has the effect of postponing elections for two of the three majority-minority districts until the 2006 elections, (Districts 5 & 8).

The implementation of 3B-Modified pits two considerations. First, the court must "fashion the relief so that it *completely* remedies the prior dilution of minority voting strength and *fully* provides equal opportunity for minority citizens to participate and to elect candidates of their choice." *McGhee*, 860 F.2d at 118 n.8 (emphasis in original). It is mandatory that this consideration be the essential character of the remedy. Second, the Fourth Circuit has previously lauded a district court's attempt to fashion a remedy which takes into account an "anticipated change in racial polarization voting patterns which the court thought would occur as black representatives allayed traditional white voter concerns about fitness and voting propensities." *McGhee v. Granville County, N.C.*, 860 F.2d 110, 113 n.4 (4th Cir.1988). Specifically the Fourth Circuit commended a plan which rejected the plaintiffs' concurrent-election proposal and continued an extant staggered-term feature, "deliberately [seeking] to guard against massive board turnovers during what inevitably was to be a sensitive transition period." *Id.* This second consideration, while prudent under certain circumstances, is not mandatory, as is the first.

Here, adopting Defendants' implementation schedule would have the effect of postponing a full and complete remedy nearly six years from the filing of this lawsuit. Conversely, the Court has no reason to believe, and Defendants have not argued, that the transitional concerns, which existed in *McGhee,* are present here, such that the need for staggered elections would somehow



outweigh the need for an expeditious implementation of a full and complete remedy.

Before the 2002 primary and general elections, Plaintiffs moved for preliminary injunctions against holding those elections under the at-large system. This Court denied those motions for a number of reasons including *inter alia* the fact that the Defendants had not yet had their full day in court. Plaintiffs have now proven their case, and other courts have recognized that under such circumstances those elections afford no basis for allowing candidates to serve out their full terms when the balance of considerations recommends otherwise. *See, e.g., Hamer v. Campbell*, 358 F.2d 215, 222 (5th Cir. 1966).

Although Defendants contend otherwise, the Court disagrees that it must extend the same deference to Defendants' implementation schedule as it is required to do for the plan itself. Defendants cite no authority to the contrary. Even to the extent the implementation schedule should be afforded comparable deference, Defendants have nowhere articulated what legislative judgments are embodied in their proposed implementation schedule.[1] It is the legislative judgments which warrant deference, and the Court cannot defer to judgments of which it is unaware.

The Court, therefore, agrees that all nine districts should be open for primary and general elections in 2004, but that Defendants may return to staggered elections, as proposed, for the election cycle beginning in 2006. In the alternative, Defendants may implement a staggered-district schedule so long as all three majority-minority districts (District Nos. 4, 5, & 8) are open

---

[1] To the extent Defendants are concerned about "cutting short" the terms of office of certain incumbents, the Court is unpersuaded that ensuring the full term of office of persons elected under an illegal election methodology is a consideration that outweighs the need for a timely remedy.



for election in 2004. The Court is satisfied that either implementation schedule would expeditiously afford a full and complete remedy.

## CONCLUSION

It is, therefore,

**ORDERED**, for the foregoing reasons that the Court **ADOPTS** the Submission of Defendants' Proposed Remedial Plan 3B-Modified, as styled, and **INCORPORATES** that Plan into this Order. The Court, however, **REJECTS** the implementation schedule submitted by Defendants and **ORDERS** that all nine Districts, as established in the approved plan, be opened for primary and general elections in 2004, or in the alternative that at least Districts 4, 5, & 8 be open for election in 2004, under a staggered-district schedule. Defendants are **ORDERED** to amend the election system for the primary and general elections for Charleston County Council in accordance with the submitted Plan and begin implementation of that system for the elections to be held in the calender year 2004.

Defendants are further **ORDERED** to submit the plan, styled 3B-Modified, as approved by the Court, **within five business days of the entry of this Order**, to the United States Department of Justice for preclearance pursuant to Section 5 of the Voting Rights Act 1965, 42 U.S.C. § 1973c.[2] This is the final judgment of the Court.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
UNITED STATES DISTRICT JUDGE

Charleston, South Carolina
August 14, 2003

---

[2] It does not appear that the plan has been formally submitted to the County Council for approval by vote. However, the plan is still subject to the preclearance requirement. *McDaniel v. Sanchez*, 452 U.S. 130, 152-153 (1981).